D'Andrea Michelle Turner
3842 West Glendale Avenue
Phoenix, Arizona 85051
Phone: 480.843.6434
Email: dandreat9@gmail.com



IN THE UNITED STATES DISTRICT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D'ANDREA TURNER,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ISSA TAJADIN, an individual, JEFF LUETKENHAUS, an individual, AIRPORT TERMINAL SERVICES, INC., a foreign corporation doing business in Arizona, JANE DOE TAJADIN,<br><br>　　　　　Defendants. | Case No. CV20-00775-SMB<br><br>**FIRST AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL** |

While working for Defendant Airport Terminal Services, Inc. (ATS) as a Supervisor, Plaintiff D'Andrea Turner was physically assaulted by co-worker Defendant Issa Tajadin because of her race and gender. Soon after complaining about it, ATS issued disciplinary action against her and created a work environment in which D'Andrea feared for her safety, subjecting her to intolerable conditions and forcing her to resign her employment. Thus,

- ATS and Tajadin
    - Are responsible for the assault on D'Andrea; and
    - discriminated and retaliated against D'Andrea on the basis of race, in violation of Title VII of the Civil Rights Act and 42 USC § 1981;
- ATS discriminated against D'Andrea based on
    - age in violation of the Age Discrimination in Employment Act (ADEA);
    - disability by denying D'Andrea accommodations for her disability violating the Americans with Disabilities Act (ADA);

Page 1 of 19

- sex in violation of Title VII; and
- retaliation in violation of Title VII.

## I. The Parties, Jurisdiction, and Venue.

1. Plaintiff, D'Andrea, is and has been at all relevant times, a resident of the State of Arizona, in the County of Maricopa County.

2. D'Andrea is an African American woman, born in the United States of America.

3. D'Andrea was employed by Defendant in Maricopa County, Arizona.

4. Defendant ATS had and continues to have a place of business in Maricopa County, Arizona at all times relevant to the allegations in this Complaint.

5. Defendant Issa Tajadin was a male employee of Defendant ATS at all relevant times and was born in Africa.

6. Upon information and belief, Jane Doe Tajadin is married to Defendant Issa Tajadin and is, and has been at all relevant times, acting on belief of the marital community of his spouse and himself.

7. Jane Doe Tajadin is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

8. All acts complained of took place in Maricopa County, Arizona, and ATS employed D'Andrea in Maricopa County, Arizona.

9. This Court has subject matter jurisdiction over the claims alleged in this Complaint.

10. Jurisdiction in this case is based on a federal question under 28 USC § 1331.

11. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 USC § 1367.

12. Based upon the foregoing, the United States District Court for the District of Arizona, Phoenix Division, is the appropriate venue for this action pursuant to 28 USC § 1391(b).

## II. Facts.

13. D'Andrea incorporates and restates the allegations in this Complaint.

14. D'Andrea began working for ATS in December 2018 as a Gate Agent and was promoted to Supervisor in February 2019.

15. She performed her job duties satisfactorily and was never reprimanded prior to complaining about discrimination.

16. As a supervisor, several employees reported to D'Andrea, including Tina (lnu) and Crystal (lnu).

17. Further, Defendant Issa, Ephram (lnu), Abraham (lnu), Tina, and Crystal regularly refused to follow D'Andrea's instructions or protocol. For example, they regularly undermined D'Andrea's ability to work by

   a. Refusing to do work assigned to them, leaving D'Andrea and Jo (lnu) to perform their duties.

   b. Lying about which planes they cleaned, taking several hours-long breaks without clocking out, and refusing to clean the planes properly (cleaning only first class or only vacuuming the carpet but not sanitizing the seats or trays).

18. In addition, Tina regularly acted in an insubordinate manner to D'Andrea, including by refusing to follow D'Andrea's direction, rolling her eyes at D'Andrea, and leaving work unexcused for hours. D'Andrea learned that Tina and Safety and Compliance Manager Axel (lnu) were engaging in a sexual relationship.

19. In addition, Defendant Issa (in his 20 or 30s years old at the time), and subordinate employees Tina (in her 20s) and Crystal (in her 20s)

    a. Regularly told her that she was too old to manage them or that she could not keep up.

    b. Claimed that her leg, neck, back, and head pain existed because she was old.

20. Defendant Issa, Tina, and Crystal also harassed Ephraim (in his 50s) about his age, saying that he was too old to do the job.

21. Almost daily, Defendant Issa, and Abraham harassed her because of her gender. For example, they told her that since she was a woman, she couldn't do the job of a supervisor.

22. D'Andrea reported acts of discrimination to Axel. He was present during some of the discrimination, but did nothing about it. For example, an employee yelled curse words at D'Andrea while Axel was present, but Axel never reprimanded them.

23. In about June 2019, D'Andrea reported to ATS HR representative Ana Vasquez that

    a. Sexual favoritism was occurring because Safety and Compliance Manager Axel (lnu) and a subordinate Tina (lnu) were engaging in a sexual relationship that disrupted the work environment.

    b. Multiple subordinate employees were harassing her because of her age (44 years old at the time) even though she was their manager.

    c. Defendant Issa and Abraham subjected her to sexist comments.

    d. She was the only female supervisor during the night shift.

24. To her knowledge, no investigation occurred and no employees were reprimanded as a result of the complaint.

25. D'Andrea made additional complaints to ATS's HR because the discrimination continued.

26. After she made the complaints, discrimination continued and retaliation occurred. For example,

   a. ATS forced D'Andrea to clean an entire airplane without any lights; she had to use her own flashlight as her sole method of light.

   b. Axel assigned her menial duties that were usually done by subordinate employees instead of allowing her to perform managerial duties in line with her position.

   c. In early June 2019, Abraham started shouting at D'Andrea, saying she was "stupid," and incompetent because she is a woman. This was triggered by D'Andrea asking him to do his job when he refused to help coworker Nakia with shared duties. Axel was present at the scene, but failed to intervene. D'Andrea complained to HR about Abraham yelling at her and said that she believed that he discriminated against her based on sex and race.

27. In late June 2019, D'Andrea requested accommodations for her disability that later proved to be four brain aneurysms. At the time, D'Andrea experienced stroke-like symptoms such as shooting pain in her leg, neck, and head, which substantially limited her ability to walk and otherwise move. As she was still in the exploratory stage of figuring out the root of her symptoms, her doctor ordered her to work a desk position to ATS, which ATS denied.

28. Instead, ATS said she had to continue working with a foot stabilizer and signing a waiver, absolving ATS of any responsibility if she hurt herself at work. D'Andrea feared that her health would worsen, so she took medical leave. ATS said she could only work if she was 100% healed.

29. In August 2019, Defendant Issa physically and verbally assaulted D'Andrea. On that night shift, Issa refused to follow procedure. When D'Andrea reminded him of the procedure, he went into an angry outburst, yelling at D'Andrea and calling her names such as "dumb b****", old, and stupid. Issa then pushed D'Andrea and she hit her head on the hard part of the airplane seat, but caught herself before she hit the floor.

30. D'Andrea was afraid of Issa because he had previously bragged about beating his wife and other black women. Issa previously called coworker Nakia a b**** and when D'Andrea intervened as their manager, Issa yelled at her saying she cannot do her job as manager because she is a woman. ATS forced D'Andrea to reprimand Issa herself, refusing to intervene despite D'Andrea's complaints.

31. Immediately after the attack, D'Andrea called Axel on the phone and explained what happened. Shaken, D'Andrea asked to call the police, but Axel told her not to.

32. When a manager Steven, who witnessed the assault, told Issa that he had to go home, Issa refused, saying that he was not going anywhere. Issa worked for an additional two to three hours before finally leaving.

33. An adequate investigation was not done. Axel claimed to have conducted an investigation into the assault. However, Axel did not have authority to investigate harassment issues and the investigation should have been done by HR. D'Andrea drafted a statement about the incident and inserted it to an HR box used for complaints. HR representative Ana and Axel claimed they did not see the complaint, so D'Andrea wrote it again. Axel saw the second statement but claimed to have lost it.

34. Further Axel didn't do a fair investigation.

      a. Axel interviewed only the two white men present at the scene, and not the two black women (Nakia and Jo Meeks) who witnessed the incident. While the white men both initially wrote incidents that supported D'Andrea, after they wrote their statements, D'Andrea saw Axel walk each man through their statements and asked them to change their account to withdraw their support from D'Andrea, which they did.

35. Because Axel did not conduct a thorough investigation, D'Andrea followed up with HR representative Ana. Ana did not conduct an investigation herself, but Ana and Axel told D'Andrea that they would have to escalate the issue to ATS's corporate headquarters.

36. Several days later, Axel told D'Andrea that he was going to suspend Issa for several days pending investigation.

37. Two days later, ATS issued D'Andrea a formal write up for an incident that occurred four months before, in April 2019. In April, D'Andrea had approached Whitney and Axel about an incident where Tina and Crystal both yelled at her for failing to follow instructions or protocol. While Whitney had repeatedly assured D'Andrea that she would reprimand Tina and Crystal for refusal to do their jobs, ATS gave this formal warning to D'Andrea, inexplicably saying *she*—not Tina and Crystal—was to blame and had been previously verbally warned in April.

38. Without informing D'Andrea, Axel scheduled Issa and D'Andrea to work on the same shift yet again; D'Andrea found out when she arrived to clock in for the shift. When D'Andrea saw Issa's name on the schedule, she told Ana that she feared another attack with Issa. Ana told D'Andrea that Whitney was going to speak with D'Andrea. But, Whitney never came to talk to D'Andrea.

39. D'Andrea feared for her bodily safety. She and the crew were in charge of cleaning airplanes, which required them to be dozens of feet above ground. They worked in the middle of the night without much security and after hours when HR and most managers already left for the day.

40. Fearing for her safety in being forced to work with her abuser in precarious conditions, D'Andrea felt that she had to quit. When she complained and ATS did nothing to help, she turned her badge in and was constructively discharged on August 25, 2019.

41. On August 27, 2019, Whitney told D'Andrea that she could come back to work, but had to accept a desk position with an earning demotion from $16 per hour to $11 per hour.

42. D'Andrea declined, still fearing that nothing was done to quell Issa's dangerous behavior towards her. In fact, one week later, she learned that Issa was given *more* responsibility and privileges at work such as driving trucks reserved for management.

43. D'Andrea followed up with ATS Senior Manager of Labor and Employee Relations, Jeff Luetkenhaus, complaining that her write-up was discriminatory based on her race, sex, and age. Jeff, however claimed that he would not overturn the write-up.

44. When D'Andrea followed up with HR's Ana Vasquez about what Jeff said, Ana told D'Andrea "Jeff was the reason for the write up and the final warning." Upon information and belief, Jeff knew about the race discrimination complaint that D'Andrea made.

45. Ultimately, nobody from ATS ever asked D'Andrea's side of the story when she was pushed and there is no apparent evidence of any reprimand.

46. As a result of the harassment she suffered, ATS's retaliatory response her complaint, D'Andrea has suffered trauma, depression, and anxiety.

### IV. Demand for Jury Trial

47. Plaintiff D'Andrea demands a trial by jury pursuant to the Seventh Amendment of the United States Constitution, and Federal Rules of Procedure 38(a), (b).

## Count I:
## Age Discrimination in Employment Act
## Hostile Work Environment, Retaliation, Termination
## 29 USC § 623
## (Against ATS)

48. The Age Discrimination in Employment Act (ADEA), 29 USC § 623(a)(1), prohibits employers from harassing, retaliating, and terminating their employees because of age.

49. Defendant violated the ADEA when it (a) subjected D'Andrea to harassment because of her age and (b) retaliated against her because of her complaints about harassment and disparate treatment because of her age.

50. Because of discrimination and harassment due to her age and retaliation due to complaints of age discrimination and harassment, D'Andrea was constructively discharged.

51. Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 USC § 626(b).

52. D'Andrea seeks a judgment for the following:

   A. Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;
   B. Back pay, reinstatement in lieu of front pay, or front pay with interest;
   C. Liquidated damages;
   D. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and
   E. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

## Count II
## Americans with Disabilities Act
## Failure to Provide Reasonable Accommodations
## Termination
## 42 USC §§ 12112(a) and (b)(5)(A)

## Retaliation
## 42 USC § 12203(a)
## (Against ATS)

53. D'Andrea repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

54. Under 42 USC § 12112(a) an employer may not discriminate against a qualified individual on the basis of disability in regard to advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

55. Under 42 USC § 12112(b)(5)(A) discrimination is defined as including making reasonable accommodations.

56. Under 42 USC § 12203(a) No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful under the ADA.

57. D'Andrea is a qualified individual with a disability.

58. ATS failed to make reasonable accommodation to the physical limitations of D'Andrea despite doctors' orders.

59. ATS failed to initiate or engage with D'Andrea to identify the precise limitations resulting from her disabilities and potential accommodations that could overcome those limitations.

60. ATS imposed a requirement that an employee had to be 100% healed before returning to work. "100% healed policy are per se a violations of the ADA." *McGregor v. Nat'l R.R. Pass. Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999); *Norris v. Allied-Sysco Food Servs., Inc*, 948 F.Supp. 1418, 1437 (N.D.Cal. 1996), aff'd sub nom *Norris v. Sysco Corp.*, 191 F.3d 1043 (9th Cir. 1999) ("Such a policy [100% healed policy] would be a per se violation of the ADA, as it would fly in the face of the ADA's requirement that employers reasonably accommodate employees with

Page 10 of 19

disabilities."); *Hutchinson v. Un. Parcel Serv., Inc.*, 883 F.Supp. 379, 397 (N.D. Iowa 1995) ("The court believes that a '100% healed' policy, if it exists, would be a per se violation of the ADA.").

61. ATS retaliated against her for requesting a reasonable accommodation including by terminating her employment.

62. The unlawful employment practices complained of in the foregoing were and are intentional.

63. The unlawful employment practices complained of in the foregoing paragraphs were and are done with malice or with reckless indifference to the federally protected rights of D'Andrea.

64. As a direct and proximate results of the conduct by conduct of ATS, D'Andrea is entitled to compensatory damages including for suffering, pain, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. D'Andrea also incurred medical expenses. D'Andrea is reasonably likely to incur more compensatory damages in the future.

65. Injunctive relief should be granted for D'Andrea against the Defendant to prevent further acts of retaliation, particularly since the Defendant appears to be oblivious to its duties and liabilities under 42 USC §§ 12112(a) and (b)(5)(A).

66. The unlawful employment practices complained of were intentional.

67. The unlawful employment practices complained of were done with malice or with reckless indifference to D'Andrea's federally protected rights.

68. D'Andrea seeks a judgment for the following for the ADA failure to accommodate claim:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;
    B. Punitive damages;

C. Monetary damages, including lost wages, salary, employment benefits, 401K vesting, stocks, and other compensation, in an amount to be proven at trial;

D. Front pay in lieu of reinstatement;

E. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to D'Andrea;

F. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and

G. Her taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 USC § 1920.

69. D'Andrea seeks a judgment for the following for the ADA retaliation claim: equitable relief specified in 42 USC § 2000e–5(g)(1), including back pay, reinstatement, or front pay in lieu of reinstatement.

**Count III**
**Title VII**
**Discrimination Based Upon Sex**
**Disparate Treatment – Hostile Work Environment**
**42 USC § 2000e-2(a)(1)**
**(Against ATS)**

70. D'Andrea re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

71. ATS discriminated against and harassed D'Andrea in violation of 42 USC § 2000e-2(1) based on sex, including by treating her differently because of sex, subjecting her to severe or pervasive conduct, including sex based-comments, allowing Defendant Issa to assault her, failing to stop the disparate treatment and harassment, and ultimately constructively discharging her.

72. D'Andrea reasonably perceived her working environment at ATS to be hostile and a reasonable woman in her circumstances would find such working environment to be abusive or hostile.

73. As a direct and proximate result of the conduct by ATS, D'Andrea is entitled to compensatory damages including for pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and nightmares. She is reasonably likely to incur more compensatory damages in the future.

74. Injunctive relief should be granted for D'Andrea against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to its duties and liabilities under 42 USC § 2000(e)-2(1).

75. The unlawful employment practices complained of were intentional.

76. D'Andrea seeks a judgment for the following:

   A. Compensatory and general damages in an amount to be determined by the trier-of-fact;
   B. Punitive damages;
   C. Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;
   D. Front pay in lieu of reinstatement;
   E. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to D'Andrea;
   F. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and
   G. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

**Count IV**
**Title VII**
**Retaliation for Reporting Sex or Race Based Discrimination**
**42 USC § 2000e-3(a)**
**(Against ATS, Issa Tajadin)**

77. D'Andrea re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

78. ATS retaliated against D'Andrea in violation of USC § 2000e-3(a) including subjecting her to disparate treatment and harassment because of her complaints about race or sex discrimination.

79. As a direct and proximate result of the conduct of the ATS, D'Andrea is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. D'Andrea is also reasonably likely to incur more compensatory damages in the future.

80. The unlawful employment practices complained of were intentional.

81. D'Andrea seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;
    B. Punitive damages;
    C. Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;
    D. Back pay, reinstatement in lieu of front pay, or front pay with interest;
    E. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and
    F. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

### Count V: Discrimination Based on Race
### Disparate Treatment and Hostile Work Environment
### 42 USC § 1981
### (Against ATS and Issa Tajadin)

82. D'Andrea repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

83. ATS discriminated against and harassed D'Andrea in violation of 42 USC § 1981 based on race, including by treating her differently because of race, subjecting her to severe or pervasive conduct, including race based-comments, Defendant Issa's assault, failing to stop the disparate treatment and harassment, and ultimately constructively discharging her.

84. D'Andrea reasonably perceived her working environment at ATS to be hostile and a reasonable African American person in her circumstances would find such working environment to be abusive or hostile.

85. As a direct and proximate result of the conduct by conduct of ATS, D'Andrea is entitled to compensatory damages including for, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and loss of enjoyment of life. D'Andrea is reasonably likely to incur more compensatory damages in the future.

86. Injunctive relief should be granted for D'Andrea against the Defendant to prevent further acts of retaliation and discrimination, particularly since these Defendant appears to be oblivious to their duties and liabilities under 42 USC § 1981.

87. The unlawful employment practices complained of were intentional.

88. The unlawful employment practices complained of were done with malice or with reckless indifference to D'Andrea's federally protected rights.

89. D'Andrea seeks a judgment for the following:

   A. Compensatory and general damages in an amount to be determined by the trier-of-fact;
   B. Punitive damages;
   C. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to D'Andrea;

    D. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    E. Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 USC § 1920.

**Count VII:**
**Retaliation**
**Disparate Treatment and a Hostile Work Environment**
**42 USC § 1981**
**(Against ATS, Issa Tajadin, and Jeff Luetkenhaus)**

90. D'Andrea repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

91. ATS, Issa Tajain, **and Jeff Luetkenhaus** violated 42 USC § 1981 when it retaliated against D'Andrea because she complained of conduct she reasonably believed was unlawful race discrimination in her employment, including when Defendant Issa assaulted her based on her race, and Defendant Jeff Luetkenhaus caused discipline to be issued against her.

92. As a direct and proximate result of the conduct by conduct of ATS, D'Andrea is entitled to compensatory damages including pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, and loss of enjoyment of life. D'Andrea and is reasonably likely to incur more compensatory damages in the future.

93. Injunctive relief should be granted for D'Andrea against the Defendant to prevent further acts of retaliation and discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 USC § 1981.

94. The unlawful employment practices complained of were intentional.

95. The unlawful employment practices complained of were done with malice or with reckless indifference to D'Andrea's federally protected rights.

96. D'Andrea seeks a judgment for the following:

    A. Compensatory and general damages in an amount to be determined by the trier-of-fact;
    B. Punitive damages;
    C. Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to D'Andrea;
    D. Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 USC 1988 (b), (c), Federal Rule Civil Procedure 54(d)(2), and Local Rule Civil Procedure 54.2; and
    E. Her taxable costs incurred herein, pursuant to Federal Rule Civil Procedure 54(d)(1), Local Rule Civil Procedure 54.1, and 28 USC § 1920.

## Count VIII
## Assault
### (Against ATS and Issa Tajadin)

97. Plaintiff re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

98. Defendant Issa physically pushed D'Andrea causing her to hit her against the hard plastic part of the seat, intentionally causing harmful or offensive contact with her to occur. Restatement (Second) of Torts § 13 (1965); *Johnson v. Pankratz*, 196 Ariz. 621, 623 (Ariz. Ct. App. 2000).

99. Defendant ATS is liable for the conduct of Defendant Issa as he was acting in the course and scope of employment at the time of the actions against Plaintiff under the doctrine of *respondeat superior*. *Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441 ¶ 9 (2018).

100. In the alternative, Isa was not acting in the course and scope of employment when he committed the assault.

101. Plaintiff has been damaged by the actions of the Defendants.

102. As a direct and proximate result of the conduct by ATS and Issa, D'Andrea suffered compensatory damages including for pain, suffering inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. D'Andrea is reasonably likely to incur more compensatory damages in the future.

103. D'Andrea seeks a judgment for the following:
   a. Compensatory and general damages in an amount to be determined by the trier-of-fact;
   b. Punitive damages;
   c. Monetary damages, including lost wages, salary, employment benefits, other compensation, in an amount to be proven at trial;
   d. Interest at highest legal rate;
   e. Reinstatement, or front pay in lieu of reinstatement;
   f. Injunctive relief to prevent future similar violations and to remedy harm done to D'Andrea;
   g. Punitive damages because Issa's assault was the result of malice, spite, ill-will, or reckless indifference to her rights; and
   h. Costs.

WHEREFORE, D'Andrea prays for the following relief:

1. For a declaration that ATS violated her rights under Title VII, Section 1981, the ADA, the ADEA, and assaulted her.

2. For a declaration that Issa violated her rights under Title VII and assaulted her.

3. All relief available under the statutes and common laws asserted in this case.

4. For injunctive relief, including a permanent injunction prohibiting ATS from engaging in discrimination under Title VII, Section 1981, the ADA and the ADEA.

5. For injunctive relief, including a permanent injunction prohibiting Issa from engaging in discrimination under Title VII and assault.

6. Compensatory damages.

7. Punitive damages.

8. For lost wages.

9. For reinstatement or front pay in lieu of reinstatement.

10. For liquidated damages.

11. For compensation for past and future non-pecuniary losses (including medical expenses) resulting from the unlawful practices under Title VII, Section 1981, the ADA, and the ADEA.

12. For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full.

13. For reasonable attorneys' fees.

14. Taxable costs.

15. All other relief the court shall deem is just.

DATED this _____ day of November 2020.