Caroline Larsen, SBN 022547
Andrew Soukhome, SBN 036729
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 E. Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 778-3700
caroline.larsen@ogletree.com
andrew.soukhome@ogletree.com

*Attorneys for Defendant Airport Terminal Services, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Dandrea Michelle Turner,<br><br>Plaintiff,<br><br>v.<br><br>Airport Terminal Services, Inc.,<br><br>Defendant. | No. 2:20-cv-00775-SMB<br><br>**DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Airport Terminal Services, Inc. ("ATS") hereby moves the Court to enforce the settlement terms agreed to by the parties. ATS also requests the Court award its reasonable attorneys' fees associated with this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. Plaintiff refuses to execute a written settlement agreement that comports with the resolution she agreed to at the settlement conference.**

On August 24, 2021, a representative of ATS, ATS' counsel, and Plaintiff participated in a telephonic settlement conference before Magistrate Judge Camille D. Bibles, in accordance with this Court's order. Dkt. 40, 41, 47. The Court informed the parties that the conference was being recorded, and advised that the recording could be referenced if there was any question regarding the settlement terms or Plaintiff's acceptance of the same. After several hours of offers and counter-offers, the parties reached

a settlement, which the Court confirmed in the minute entry entered the same day. Dkt. 53. The Court directed the parties to file a stipulation of dismissal by September 23, 2021. *Id.*

Since that time, ATS' counsel has tried repeatedly to finalize a written settlement agreement; however, Plaintiff has unreasonably delayed this process and refuses to execute an agreement unless it contains terms to which the parties never agreed. On August 25, 2021, undersigned counsel emailed a draft of the settlement agreement to Plaintiff, which contained all of the terms that the Court had communicated to the parties during the settlement conference. The next day, Plaintiff responded that she needed additional time to review the agreement and possibly confer with a legal consultant before executing. On September 7, 2021, Plaintiff emailed undersigned counsel with numerous proposed revisions to the settlement agreement. Among other changes, Plaintiff asked to make numerous terms, such as the covenant not to sue and confidentiality clauses, mutual. During the settlement conference, Plaintiff did not request, nor did ATS agree, to make these settlement terms mutually binding. Nonetheless, in the interest of compromise, ATS consented to make the covenant not to sue mutual.

Plaintiff also objected to the inclusion of a definition of Released Parties that encompasses ATS and its parents, successors, predecessors, divisions, subsidiaries and former subsidiaries, related companies and affiliates, and its current and former officers, directors, employees, etc. At all times, ATS has clearly indicated that any settlement must encompass a full release and waiver of claims related to Plaintiff's employment at ATS and her resignation of the same, thus, the settlement agreement encompasses any entities against whom she might seek to assert such claims. This is particularly critical because Plaintiff initially named two employees of ATS as individual defendants in this action.[1] Plaintiff has objected to this term, and has repeatedly insisted that the release must apply

---

[1] Plaintiff named one of her subordinates, Issa Tajadin, and Jeff Luetkenhaus, ATS' Senior Manager of Labor and Employee Relations, as individual defendants in this action; however, both of them were dismissed due to lack of service. Dkt. 31.

only to ATS.

Again, in an effort to be reasonable and bring this matter to a conclusion, ATS offered to revise the agreement to include a more specific definition of the Released Parties, including naming which affiliated companies are included. However, Plaintiff responded that ATS must "name and define all individuals of the 'Released Parties,' including its or their relationship to either of the parties" before she would consider whether to agree that they should be included within the scope of the release.

More than a month has passed since the parties agreed to settle this action and ATS' counsel provided the draft settlement agreement to Plaintiff for review, yet Plaintiff still has not executed the agreement. Instead, she has repeatedly attempted to make several terms of the agreement mutual, although ATS never agreed to such terms, and she has objected, without explanation, to numerous standard settlement terms that ATS included in the agreement to ensure that it fully and completely resolves all potential claims and issues related to Plaintiff's employment. Accordingly, ATS now moves the Court to enforce the settlement agreement as agreed to by the parties.

**B. This Court should enforce the settlement per the agreement of the parties.**

The parties reached a valid, enforceable agreement at the August 24, 2021 settlement conference. This Court has the inherent power "to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (quoting *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). The parties entered into a binding agreement that the Court should enforce.

In this action, Plaintiff asserts claims under the four different federal statutes – the Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act, and 42 U.S.C. § 1981 – as well as a state law claim for assault. Dkt. 17. "Generally, the construction and enforcement of settlement agreements, including the determination as to the validity and scope of a release therein, are governed by general contract principles under state law." *Hisel v. Upchurch*, 797 F. Supp. 1509, 1517

(D. Ariz. 1992) (citation omitted). However, settlements and releases entered into during pending federal litigation "implicate federal procedural interests distinct from the underlying substantive interests of the parties." *Id.* at 1517 (quoting *Gamewell Mfg. v. HVAC Supply*, 715 F.2d 112, 115 (4th Cir. 1983)). Thus, "conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law." *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). "More specifically, federal common law controls the effect and interpretation of such a release or agreement." *Hisel*, 797 F. Supp. at 1517 (citations omitted). "In particular, release of a civil rights claim has been held to be controlled by federal common law." *Id.* at 1518.

As for the specific claims at issue in this case, "[t]he interpretation and validity of a release of claims under Title VII is governed by federal law." *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989) (citations omitted). The same is true for age discrimination claims under the ADEA. *Cf. Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir. 1986) (citing *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1368–69 (6th Cir. 1975)). Federal law also governs the release of claims under the ADA and 42 U.S.C. § 1981. *See Salsman v. Access Sys. Ams., Inc.*, 2011 WL 1667973, at \*2 (N.D. Cal. May 3, 2011); *Player v. Kansas City So. Ry. Co.*, 2011 WL 5573840, at \*2 n.3 (W.D. La. Nov. 16, 2011).

"Settlement agreements have always been a favored means of resolving disputes, thus they will be entered whenever possible." *Hisel*, 797 F. Supp. at 1518 (citations omitted). "Historically, federal courts have applied general principles of contract in determining the validity of a release of rights under federal statutes dealing with the employer-employee relationship." *Id.* (citations omitted). "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law. Each party agrees to extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (citations and internal quotations omitted). "Common law requires a meeting of the minds on all material terms before a settlement agreement can be reached.

It also requires that the parties manifest an objective intent to be bound by the settlement." *E.E.O.C. v. Kidman*, 244 F. App'x 70, 72 (9th Cir. 2007) (upholding settlement agreement reached by parties during settlement conference) (citations omitted). All of these elements are met here. To attack the settlement, Plaintiff bears the burden of showing that the agreement "is tainted with invalidity." *Hisel*, 797 F. Supp. At 1518 (citations omitted). She cannot meet this burden.

The result is no different if the Court applies state law. "Construction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998) (citation omitted). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained." *K-Line Builders, Inc. v. First Fed. Savings & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) (citing *Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc.*, 542 P.2d 817 (1975)). All of these elements were met here.

During the settlement conference, the parties negotiated extensively regarding several terms, all of which are memorialized in the draft agreement that Plaintiff has refused to execute. *See* Confidential Settlement Agreement, Waiver, and General Release filed separately with Motion to Seal. There was a clear offer and acceptance on all material terms, which included consideration to be provided to Plaintiff to which she would not otherwise be entitled. The parties clearly manifested an objective intent to be bound by the settlement, which was confirmed in the minute entry entered by the Court stating that "[s]ettlement has been reached." Dkt. 53. Notably, Plaintiff never lodged any objection to the minute entry, which further affirms her acknowledgment that the parties reached a settlement.

Plaintiff does not appear to dispute that the parties agreed to settle this action. The settlement conference judge presented the various terms to each party and retained a recording of their acceptance. Plaintiff now simply wants to renegotiate the terms. "[I]t is

well-established that an oral settlement agreement is binding on the parties, particularly when the terms are memorialized into the record." *Sargent v. Dep't of Health & Human Servs.*, 229 F.3d 1088, 1090 (Fed. Cir. 2000) (citing *Goodwin v. Dep't of Treasury*, 983 F.2d 226, 228 (Fed. Cir. 1992)) (holding that oral agreement between employee and agency was binding); *Boucher v. Dep't of Treasury*, 68 M.S.P.R. 40, 43 (1995); *Westfall v. United States Postal Serv.*, 64 M.S.P'R. 90, 93 (1994)); *see also In re Omni Video, Inc.*, 165 B.R. 22, 26 (Bankr. N.D. Tex. 1994) ("An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing.").

For example, Plaintiff has argued that the scope of the release must be limited to ATS. However, she agreed to a full release and waiver of claims related to her employment at ATS and her resignation, thus, the settlement agreement encompasses any entities against whom she might seek to assert such claims. In a similar case, the court found that the plaintiff had agreed not to reapply to work for any entities related to the defendant corporation. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139-40 (9th Cir. 2002). The written agreement merely spelled out those entities. *Doi*, 276 F.3d at 1139 n.5. The plaintiff also agreed to a confidentiality provision, and the court concluded that the provision in the agreement was a very standard release clause that did not represent any overreaching by the defendant. *Doi*, 276 F.3d at 1139. Accordingly, the court found that the plaintiff failed to show that any of the terms of the written agreement were inconsistent with the terms of the agreement made on the record; therefore, the district court did not abuse its discretion by enforcing the written settlement agreement. *Doi*, 276 F.3d at 1139.

The Court can enforce the settlement based on the recording of the settlement conference memorializing the terms to which they agreed. Under these circumstances, there is no need for an evidentiary hearing on whether an agreement was reached, or what its terms were: the parties dispelled any such questions in the court-conducted conference.

*See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir. 2002).[2]

**C. ATS is entitled to recover its attorney's fees incurred to prepare this Motion.**

A settlement agreement is a contract. Under Arizona law, the prevailing party in an action arising out of contract is entitled to recover costs and attorneys' fees. A.R.S. § 12-341.01; *see Hays v. Fischer*, 777 P.2d 222, 229–30 (Ariz. Ct. App. 1989) (affirming aware of attorneys' fees arising from action to enforce settlement agreement). Thus, ATS is entitled to recover its fees incurred to enforce the settlement agreement in an amount to be determined at the conclusion of briefing and any argument or hearing. ATS has been forced to incur unnecessary attorneys' fees and costs as a result of Plaintiff unreasonably refusing to finalize the settlement the parties agreed to over a month ago. *See Doi v. Halekulani*

---

[2] It is not clear that Local Rule of Civil Procedure 83.7, which provides that "[n]o agreement between parties or attorneys is binding, if disputed, unless it is in writing signed by the attorney of record or by the unrepresented party, or made orally in open court and on the record," applies to settlement agreements. *See Wood v. BAC Home Loans Servicing*, No. CV-11-01863-PHX-SRB, 2013 WL 12106945, at *3 (D. Ariz. Dec. 23, 2013). Regardless, Rule 83.7 only applies to "disputed" agreements. In *Benge v. Ryan*, this Court found that Rule 83.7 did not apply where the party's actions implicitly conceded the existence of a binding settlement agreement. 2017 WL 588706, at *3 (D. Ariz. Feb. 14, 2017). Here, it does not appear that Plaintiff disputes that the parties reached a settlement. She simply wishes to renegotiate the terms and has refused to execute the agreement unless ATS submits to her demands. For example, in her response email on September 13, 2021 to undersigned counsel, Plaintiff acknowledges that "I did not object to ATS' . . . settlement offer," and that "[a] review of the recorded conference might be beneficial to an understanding of what terms and conditions *were actually agreed to*" (emphasis added). Coupled with Plaintiff's lack of objection to the Court's minute entry that a settlement was reached, these statements constitute Plaintiff's admission that a binding settlement agreement exists. Plaintiff's requests that terms be changed, such as striking Older Benefits Workers Protection Act disclosure language required for a valid release of claims under the ADEA, reflect that Plaintiff does not understand the terms – not that she disputes the existence of the agreement. Accordingly, Local Rule of Civil Procedure 83.7 does not preclude this Court from enforcing the settlement agreement.

In the alternative, even if Rule 83.7 does apply, the settlement agreement has been made orally in open court and entered into the record as memorialized by the recording of the settlement conference and the Court's minute entry recognizing that a settlement was reached. *See Benge*, 2017 WL 588706, at *3 n.4 (noting that even if Rule 83.7 applied, it would have been satisfied by court filings that confirmed settlement was reached).

*Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002) (affirming sanctions entered against plaintiff who made binding settlement agreement in open court but unreasonably failed to sign written agreement).

For the foregoing reasons, ATS respectfully requests this Court to enforce the settlement agreement lodged with the Court pursuant to ATS' Motion to Seal and award ATS its attorneys' fees in connection with the enforcement of the settlement agreement.

RESPECTFULLY SUBMITTED this 1st day of October 2021.

>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
>
>By: s/ Caroline Larsen
>    Caroline Larsen
>    Andrew Soukhome
>    2415 East Camelback Road, Suite 800
>    Phoenix, AZ 85016
>
>*Attorneys for Defendant Airport Terminal Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of October 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. I also certify that, on the same date, I served the attached document by email and U.S. first-class mail, postage prepaid, on:

Dandrea Turner
3842 W. Glendale Ave.
Phoenix, AZ 85051
Dandreat75@gmail.com

*Plaintiff Pro Se*

s/Bernadette Young

48699750.1

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700